(No. 3116—

JOHN FREEMAN, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed August 18, 1939.*

SEYMOUR SCHEFFRES, *for claimant.*

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

Mr. Justice Linscott delivered the opinion of the court:

John Freeman, the claimant, while in the employ of the Division of Highways of the State of Illinois, on the 25th day of May, 1937, was sweeping the gutter on 87th Street near Princeton Avenue, in the City of Chicago, Illinois, when he was struck by what is commonly called a "hit and run," automobile driver. He sustained a severe injury, including a concussion of the brain, a fracture of the right fibula, a laceration of the frontal region and abrasion about the right ear and shock, and numerous contusions and abrasions about his chest, body and limbs. He was taken to the Auburn Park Hospital.

Claim was duly filed and the proper notice given.

It appears that claimant was a married man at least sixty-eight years of age. On examination he said that he did not know just how old he was but thought he was sixty-eight. He had no child or children under sixteen years of age.

Claimant's employment was seasonal and it is admitted that his annual earnings for compensation purposes amounted to $800.00 per year based on 200 days work, eight hours per day at 50c per hour, and it is conceded by both parties that he was struck by a Ford truck driven by Mr. William Dorman, 8139 Vincennes Avenue, Chicago, Illinois.

It is also admitted that the accidental injury sustained by the claimant arose out of and during the course of his employment, and that with respect to claimant's employment, both the claimant and respondent were operating under the Illinois Workmen's Compensation Act.

The respondent has paid the Auburn Park Hospital $148.00 for hospitalization necessitated by claimant's injuries and has paid Dr. C. K. Barnes $68.00 for medical services. The claimant was paid compensation in the sum of $138.00.

Claimant seeks an award for permanent total disability with a pension for life, or an award for forty per cent loss of use of his right leg, seventy-five per cent loss of hearing in the right ear, sixty-four weeks of temporary total incapacity and $274.00 for medical expenses.

The respondent produced Dr. Thomas as a witness. He is a very able man and testified that the claimant was able to return to work about four months after the accident. Dr.

Thomas had examined the claimant sometime before the hearing, but no physician was present on behalf of the claimant, and objection was made because claimant was not furnished with a copy of his findings, and this objection must be sustained.

Claimant testified that he worked six weeks during the summer of 1938 at a swimming pool taking care of lockers, showers and mopping floors, but there is no evidence as to what his earnings were at this work. We are, therefore, unable to make a finding of permanent partial disability. He has received the sum of $138.00 from the State. It is stipulated that his annual earnings for compensation purposes were $800.00, or an average weekly wage of $15.38. Therefore, the compensation rate applicable would be $7.69 per week. Because we are unable to consider Dr. Thomas' testimony, we must rely upon the testimony of Dr. Tito. According to the last named Doctor, the condition of claimant's right leg reached a permanent stage six months from the time of the injury. The injury occurred on May 25, 1937, and this would bring it down to November 25, 1937. He was paid down to September 28, 1937. He is, therefore, entitled to 8 2/7 weeks at $7.69 per week or $63.72.

From the testimony in the record, we are of the opinion that the claimant has sustained a forty per cent limitation of flexion in the right knee. This does not necessarily mean that he only has a sixty per cent use of his right leg. Manifestly, it is not necessary to be able to flex a knee 100% to perform the average laborer's job, because his ability to double up his leg in one motion only 60% of normal, does not mean that the leg has been 40% disabled. It appears that the condition he has found in the knee is permanent. His own testimony is that he has worked since the accident. He testified that he worked for six weeks during the summer of 1938 taking care of lockers, showers and mopping floors. He has done no work since then and what he received for that work does not appear in the record. He has trouble getting his foot down when he is going down steps or getting off the street car. He was not using a cane when he testified. His leg tires easily and he has pain when he stands on his leg a little while.

All the testimony considered, we are of the opinion that claimant has lost not to exceed 40% of the use of his right

leg. There is no evidence in the record that would justify a permanent partial disability otherwise.

Giving the respondent credit for the amount that has been paid and from the testimony of Dr. Tito, we conclude that claimant has 8 2/7 weeks coming to him or the sum of $62.73 for temporary total disability.

Under Section 8 (e) subsection 15 of the Compensation Act it is provided that for the loss of a leg, or the permanent and complete loss of its use, fifty percentum of the average weekly wage during one hundred and ninety weeks. His average weekly wage is $7.69. If we are correct in finding that he has a forty per cent loss of the permanent use of his leg, that would entitle him to 40% of $7.69 x 190 weeks, or $584.44.

It is also contended that the claimant lost 75% of the use of one ear. Subsection 16½ of Section 8 (e) provides as follows: "For the total and permanent loss of the hearing of one ear, fifty percentum of the average weekly wage during fifty weeks, and for the total and permanent loss of hearing of both ears, fifty percentum of the average weekly wage during one hundred twenty-five weeks." Subsection 17 of the same Section provides: "For the permanent partial loss of use of a member or sight of an eye, but not including the hearing of an ear * * *." It would seem that the partial loss of hearing is especially excluded from the Act, and no award can be made therefor.

Another question for this court to consider is whether Dr. Tito is entitled to a fee for medical services. It seems that Dr. Tito was an interne in the hospital when claimant was taken there. The State paid the hospital physician for taking care of the claimant, and paid the hospital bill. It does not appear that the claimant employed either doctor and it does not appear that the respondent employed either doctor. The respondent did recognize the claim of the hospital physician. In October following the accident, the State advised Dr. Tito that it would not recognize his employment and that he must look to claimant for his pay. From all of the facts in the record it would apear that Dr. Tito was an agent of the hospital doctor and that his principal has been paid. We cannot, therefore, allow any further fees for medical care. Under the Act, Dr. Tito must look to claimant for his remuneration.

We, therefore, make an award to claimant, John Freeman, in the sum of $62.73 for 8 2/7 weeks that elapsed during the healing period that he has not been paid for, and the further sum of $584.44 for permanent disability of the right leg, or a total of $647.17.

This award being subject to the provisions of an Act entitled, "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved July 3, 1937 (Sess. Laws 1937 p. 83) and being, by the terms of such Act, subject to the approval of the Governor, is hereby, if and when such approval is given, made payable from the appropriation from the Road Fund in the manner provided for in such Act.